This court is now in session. Please be seated. Would the clerk call the next case, please? 314-0487, Lyons-Wilburton Building Center, a panel by Zane Smith versus 7722 North Ashland, LLC, Everett, Manhattan, Arkansas. Thank you. Mr. Smith, good afternoon. Good afternoon, members of the panel. May it please the court, counsel. This case comes before you on behalf of the two parties, Lyons-Wilburton, sold construction materials to the defendant, and the defendant didn't pay. The case was filed. It was a lawsuit filed by Lyons-Wilburton against all three defendants, two LLCs and an individual. The individual in the LLCs hired counsel, filed an appearance, answered the complaint, responded to discovery. It was at this time that apparently, from the record, the defendant's attorney stopped communicating with the defendant. That, and I want to make sure that the panel is clear on this, the plaintiff's counsel did not stop communicating with the defense counsel. All of the motions, all of the orders, all of the judicial directions were all communicated to the defense counsel, and they were communicated to defense counsel by both regular mail and email. There was a judgment entered against the individual Jefferson defendant vying through a motion for summary judgment, and there was a judgment default entered against the two LLCs vying through a default motion. The court, after sending the matter, after notifying the defense counsel, entered judgment against all three of them. As I said, individually and jointly between the two LLCs and Mr. Johnson, individually. Thereafter, there was a citation that was served upon the defendants. It was only at the time of the citation that was served on the defendants that the defendants then filed the instant 214.01 motion, which is the subject of this appeal. The trial court, we believe, in error, granted the defendants 214.01 motion, and we're asking this panel to reverse the order of the trial court. The basis for our request and the basis for the appeal is basically that the defendant did not live up to and did not comply with the basic requirements of the 214.01 petition. 214.01 petition required, at a minimum, an affidavit be filed indicating that the defendants had a meritorious defense and that they had expeditiously filed defenses in the case and expeditiously had filed the 214.01 motion itself. Despite the absence of an affidavit, except there was eventually an affidavit filed by and through a respondent brief, but there was no initial affidavit filed, and the affidavit that was eventually allowed to be filed did not contain what we believe and what we believe the panel will find, meritorious defenses. The 214.01 petition, in this case, is basically a two-step process. The defendants have to show that they have meritorious defenses. If they don't show that they have meritorious defenses, then there is no further inquiry needed, and the 214.01 should have been dismissed. We believe that the defendant has not presented meritorious defenses. Secondly, if the defense files meritorious defenses or correctly or successfully argues that there's meritorious defenses, then the court can look at whether or not the defenses were expeditiously presented to the trial court prior to the 214.01 and whether or not the 214.01 was expeditiously filed, which, again, we believe the defense were deficient on this and the trial court was in error when it granted the 214.01. Specifically, the affidavit was not filed. There was no showing that the judgment in this case was not the result of petitioner's lack of due diligence. There was no showing of a meritorious defense, which I've already said. There was no showing of due diligence in presenting the defenses to the court. We look at the affidavit, the defense argument in their affidavit. In terms of the defenses, basically, there's five. And I'll briefly go through them very quickly. The first offense is that Johnson individually was not represented by counsel at the time that he entered into and signed the personal guarantee, which was the subject of the judgment. This, we do not believe, is a meritorious defense. There is no defense that you're not represented by counsel. Therefore, somehow, the note or the mortgage or the document that you signed. 99% of the mortgages and loans that are signed in normal commerce do not involve a lawyer. This is not a meritorious defense to a personal guarantee in this particular case. The next offense is that Mr. Johnson says he did not understand the document when he signed it. However, we did take his deposition, and the reality is he said, well, I could kind of understand it. I understood that I owed the principal. I didn't understand that I owed the interest in the attorney's fees. Anyway, he cut it. It's not a meritorious defense. The next meritorious defense presented by the defendant is the document was prepared by plaintiff's attorney, that the document referring to the guarantee of the loan. I would submit to the panel, so what? There has been. He alleged that the agreement didn't reflect what they actually agreed. The party's agreement was that it was only guaranteeing the principal. That's what he said in his deposition. That's what he said in his deposition, but that's not a defense. First of all, the note on its face says that the guarantee, he guarantees the note and the terms of the note. The terms of the note have a. Well, it said it didn't reflect what was written. It was not the reflection of a contract that they entered into. That's what he's saying. Well, and. That would be a defense, isn't it? It would only be a defense if there was a raise that there's some part of the terms of the guarantee of the note were ambiguous. That's not a defense. If there's an ambiguity to the document, if, for example, you couldn't tell what the parties were or what the. I'm not talking about ambiguity. I'm talking about he's saying that it did not reflect their agreement. What was written was not what they agreed to do. Well, then why did he sign it? And so he's seeking, I suppose, a reformation decision or whatnot. And I agree with your honor that if. Contract causes of action. Right, if there was a problem with the note, if there was some ambiguity in the document, then it might be a defense of, well, I didn't draft the document. So therefore, the ambiguity goes against me because the plaintiff's lawyer drafted the document. I'm not talking about ambiguity. I'm talking about something different. What I believe your honor is raising is the question of, well, I didn't understand what I signed. And I don't think, I don't believe there's any case law that would support, I don't believe what I signed is what I agreed to. On the deposition, he's making a contrast between what he thought the agreement was, what they agreed to do, and what got reflected in the written instrument. Right, and if there's a difference. And that's what he claims is the difference. And it's not about ambiguity, or it's not about, you know, I didn't understand. In his deposition, he said, I didn't understand that my guarantee included interest in attorney's fees. I do understand that it included my obligation to pay the principal, which would attack the total amount of the judgment. I understand the court's comment. The issue is whether or not that's a meritorious defense when the face of the note that he signed, that there's no dispute that he signed, is that he only has two ways to defend that. I didn't read it, which is not a defense. Or I didn't have a lawyer explain it to me, which is not a defense. Or if I didn't understand it when I signed it, it's not a defense unless there's something in the note that would suggest that it's either difficult or a problem to understand. Or from. Pardon me? Or from. Or from. The real problem with that particular argument is that there's a borrower against Mr. Johnson. There's a borrower entered in June in the case, I'm sorry, August 8, 2013, 8-8-13. And the borrower against Mr. Johnson says that he is barred from presenting any evidence and barred from presenting any testimony. That borrower has never been reversed. It has never been attacked. It has never been requested to be changed. It is not part of this appeal. So let's assume on some planet that Mr. Johnson is correct and that he can somehow come before a court and say, well, gee whiz, I didn't really understand what I was signing, even though I have a net worth of $12 million, I have a master's degree, and I own 10 properties. I still don't understand what I signed. Therefore, who's going to testify to that? Mr. Johnson can't. He's got a borrower. He can't present any documentation to suggest that he didn't understand it. He has a borrower. Bar or, excuse me. So in the face of the prior judicial rulings by the trial court, it is not a reasonable or meritorious defense that I didn't understand it, because there's not going to be anybody at the trial who's going to say I didn't understand it besides Mr. Johnson. You know, the hearing on this motion is a hearing, not the trial, not a factual hearing. It's just whether or not it raises a meritorious defense. And it raises the due diligence requirements in addition. It does. You have to raise the hearing. It's not the hearing, the factual hearing. No, I agree that there isn't a factual hearing. However, the key word is meritorious. And our position is that it is not a meritorious defense if you are not allowed to present it. Where is that? The borrower? It is 8-8-13. We have the document number. I can find that very quickly, Judge, while my assistant is finding it. Was that forever, or is that something subject to change? No, that's the law of the case, Judge. That was done prior to the judgment. That was done prior to the motion for the 214-01. And that is part of C-128. The next meritorious defense offered by the defendant in their affidavit is that there was no provision for attorney's fees. I would urge the panel to look at Article 3.1 of the actual note, specifically provides for attorney's fees. The guarantee is at C-13. In the guarantee, Mr. Johnson says, quote, hereby unconditionally guarantees that the note will be paid in full within the terms of the note. And the note itself specifically provides for attorney's fees. So I don't see how that can possibly be a meritorious offense if the guarantee specifically refers to attorney's fees in the note, and the note at Article 3.1 allows for reasonable attorney's fees. I would also remind the panel that the judgment against Mr. Johnson was based upon a motion for summary judgment. That means that the court actually took into consideration, heard evidence, reviewed documentation, and then entered the judgment. And then the last, and I think Your Honor touched on this, the last part of the affidavit is relied on their attorney who allowed judgments to be entered without their knowledge or consent. What this means is that the defendants have raised the argument that their own attorney failed to keep them informed and aware of the judicial proceedings, including the motions that were set for default and for judgments. The review of a long line of cases indicates that neglect or even fraud by your own attorney is not a basis to support a 2-1401 motion. The recourse, of course, is if your attorney makes an error or commits fraud or does something to impede or impose an adverse judgment against you, your response is to file a suit against your lawyer, not to file a 2-1401 seeking a reversal of the judgment. It is our position, Your Honor, can we go back to the, if, remind me if I'm correct, I think the bar order was on earlier discovery attempts. Attempts to take the, wasn't it the deposition of the person? It was part of the discovery sanction, yes. So the bar was because the deposition didn't get taken. There was no deposition, as a matter of fact. So it was not taken. So at the default hearing, there was also an order saying the guy couldn't testify anyway because it didn't allow the deposition to be taken. There was no deposition taken. There was no deposition taken. That's correct. But the default hearing was only as to the two LLCs. The summary judgment hearing was as to Mr. Jefferson individually. And the court did take into consideration documentation and the notes and the discovery, because I will remind the panel that Mr. Johnson did respond to the discovery, the interrogatories and the production requests. He provided information. Although he didn't fully comply, the information that he did provide was sufficient for the court to enter a judgment against him. The reason I'm asking that is I don't understand if that's exactly law of the case if the case was opened up. Well, I actually had a conversation about that before I stood up, because I anticipated that question. So the issue is, well, hold on. If he wins the 214-1, gets back before the judge and says, oh, by the way, I'd like to get rid of that bar motion, I think that there's a very good argument to be made that that's the law of the case and he would not be allowed to do that. Why? Because that would then reopen the entire case to the discovery. All the depositions would have to be rescheduled, because the bar owner prevented or allowed all the parties to proceed without any more or additional discovery. I suppose the court could do anything. That's why I don't know if it's really law of the case if the case is opened up. If it's not. Because if it's opened up, then the parties would have a chance to do more in the case. From my research and what we've looked at, if it isn't before the court and it's part of the appeal, and they're only appealing the reversal of the default judgment against the defendants and the summary judgment against Johnson, the defendants would not be allowed to go back to the court and say, well, not only do I want the appellate court, here I am, I'm ready for my trial now, now I want to reverse everything that's been done in the entire case. I don't think that would be allowed. I don't think they can reverse everything, but I think they're, I don't know, the law of the case is a very technical aspect and I'm not so sure it's barring every piece of discovery, everything, if the case is opened up. I agree with you, Your Honor. However, for purposes of the 214-01, in order for the trial court to have granted that, they would have had, they mean the defense, would have had to present a reasonable defense to the case, which they could not with the standing bar order. And there was no request to lift the bar order. So we would request the court to reverse the trial court's 2-6-2-14 order that vacated the judgment order, entered on 10-25-13. Thank you. Thank you. Mr. Argyle-Delmas? Good afternoon, Your Honors. Pleasure to be here. It's been a long time since I've gotten to Ottawa. You always feel like a lawyer when you're in front of this panel here, the wood panel and everything. But may I please support? My name is John Argyle-Delmas. I am the attorney for all of the appellees today. And I would like to just tell a few facts. I know you've read the briefs, but Mr. Johnson owns these two LLCs. So the defendants are two LLCs and Mr. Johnson. They owed some money to Lyons Lumber. Lyons Lumber sued them. He hired an attorney. And this attorney, if you read the record, was half the time in Europe, but he was communicating with them. And I think one of the errors in the facts that were stated by counsel earlier was that the attorney stopped communicating with them. The last communication between Mr. Johnson and his attorney was November 18, 2013, almost a month after the judgments were actually entered. So a lot of the cases that have been cited of clients who have neglected their case, clients who could not use their attorney's neglect as a reason why they're off the hook, if you will, are cases where the attorney was fired 11 or 12 or 19 months ahead of time, and then the individual did nothing. Or the attorney didn't communicate with them for 6 or 10 or 8 months. If you look at all the comparative cases as pointed out in our brief, that's not this situation. But it's not the plaintiff's fault that the plaintiff didn't hire that lawyer for you or for your client. You know what I'm saying? It is not, Your Honor. The remedy is not to sue your lawyer. It is. Of course, when we get to the equities portion of it, a guy who's AWOL, possibly with no medical insurance, doesn't provide much relief. Well, let me answer this, then, along with that. Since when have you ever seen a case where it says you can defend against a written contract by saying, I didn't understand it, that that's a defense to a contract? Judge, I will say that's not the most important defense. I think, as Justice Carter was articulating, and I was agreeing with a lot of what he was saying there, is that if you take the totality of things, if this is not a standard mortgage, as Mr. Smith pointed out, where you go and you sign this uniform document. This was an agreement that Lyons Lumber and Mr. Johnson and his entities made. We're going to sign these notes, and we're going to have a guarantee. Mr. Johnson is saying the guarantee document did not reflect what we agreed to. And I signed it. You guys drafted it. I didn't have a lawyer to review it to make sure it said the right thing. I think those are material facts that, if proven true, would be meritorious defenses. And in addition to that, if the guarantee document does not It would be a defense if there was fraud in the inducement. In other words, the contract's written in plain English. Mr. Johnson can read. He's obviously some sophistication. We're not talking about a grade school dropout here. And how can you sign a contract and say, well, that's not what we agreed on? Well, then you shouldn't have signed it. Isn't that the law? Well, I don't know if that's the law, but he shouldn't have signed it. I would agree with that point. But I think, in addition, when we look at the judgment that was entered, the judgment that was entered includes principal interest, which my client disputes was supposed to be part of the agreement. And even in addition to that, includes attorney's fees. So the judgment is flawed. If the guarantee document did not provide for attorney's fees, then it was inappropriate. You could not have made that judgment with attorney's fees. Well, the document either provides for attorney's fees or it doesn't. And apparently a 3.1 or something. The guarantee document does not provide for attorney's fees. The contract provides. The note provides for attorney's fees. And I disagree with Mr. Smith's argument that the language of the guarantee also includes the attorney's fees provision on the note. I think there is an argument to be made that it does not. The language used does not clearly state. Most guarantees will separately state we're going to include attorney's fees as well. They don't just, it doesn't quite say they would pay everything owed under the note. That's not what it says. It says the guarantee, the payment of the note pursuant to its terms. Does that include attorney's fees or not? I don't think it does. And I think it's a reasonable argument to be made. That's a position we have, I guess. I understand what you're saying. I mean, in a perfect world, my client should not have signed these documents as they did not accurately reflect the agreement. But at the same time, there are arguments to be made that are meritorious. Without fraud, without some kind of fraud on his part, I don't understand how he's, well, I signed this, but that's not what we agreed upon. But I signed a contract that said that this is our agreement. Well, that's one argument. That's one argument. The other argument is that attorney's fees should not have been included. And that's an argument that would make the judgment, as it stands, flawed. Because if the trial court agreed with me that the guarantee does not incorporate that section 3 point whatever, the note for attorney's fees, then the judgment as it stands is flawed. It's inaccurate on that point alone. Well, just the fact that a judgment might be flawed in some respect might be. And I think what the affidavit says is he disputes the amount owed and the amount of the judgment. Yes. On its face, that's not a meritorious defense. Because if that's a defense to a judgment, Judge Senate said, I disagree. I dispute the amount of the judgment and the amount owed. That's a meritorious defense? Well, I think as part of the motion to vacate, and this also goes to that issue of barring Mr. Johnson's testimony, the plaintiffs sought Mr. Johnson's deposition testimony. In my opinion, the whole issue of the barring of his testimony has really been reopened by the plaintiffs themselves by requesting and conducting Mr. Johnson's deposition for purposes of the motion to default. So in his deposition testimony, he more fully articulates the issues of the attorney's fees, the issues of that he was only supposed to guarantee the principal, not the interest. They're more fully articulated in the deposition testimony that plaintiffs wanted, that plaintiffs conducted, and that plaintiffs presented not only to this court, but to the trial court. So when we look at the affidavit, the trial court, when deciding on our 2-1401 motion, took all of that into account at plaintiff's request. So I think that he did more fully articulate his defenses in the deposition testimony. But wouldn't the trial court have been the place to raise that, and then in summary judgment are on the hunt? Well, and I think certainly if Mr. Johnson had a more competent attorney, they would have done that. They didn't. And that gets to the equities portion of this, where the court, per heirloom, the heirloom case that we're all familiar with, does have the right to relax some of this in regard to the equities of the case. But you know, in criminal law, you can argue about ineffective assistance of counsel. But in the civil law, you've got to dance with the gal to bring it. And I'm doing my best to do that. All right. I will point out, and one of the things I did want to point out, and it was our briefs. The arguments we made in our briefs obviously have some, there are some major changes. And specifically, the Supreme Court case, which I believe this court was waiting to hear on in order to give us a little more guidance. But the Warren County Soil and Water Conservation District, which was a third district case, which went up to the Supreme Court, 2015 IL 117783, has clearly clarified the whole issue of what your review is. We argued it as a de novo review. Vincent case, the Supreme Court Vincent case, suggested that this might be de novo. We did question it in our brief. And the Supreme Court in 2015 came down and stated, in paragraph 51, according to the whole, that when a section 2-1401 petition presents a fact-dependent challenge to a final judgment, or order the standards from heirloom governed that proceeding. Thus, the petitioner goes on and essentially it says that the abuse of discretion, that this court will review our trial judge's decision based upon an abuse of discretion standard rather than the de novo standard that was suggested in the appellate level of Warren County and in the Vincent case. So I do think that is obviously extremely substantive. My feeling was that this court knew this case was coming down. I wanted to wait and find out what the Supreme Court was going to say on this issue. But it's extremely pertinent to what we're talking about today. So if we do go about the abuse of discretion standard, which this court obviously is very familiar with, then we would simply have to inquire as to whether our trial judge, that no reasonable person would agree with the position taken by our trial court. And I think while there are issues raised by the justices as to whether our trial judge got it right, but as long as no reasonable person would have taken her position, then this court needs to affirm her judgment granting our motion 2-1401, which is what we are certainly urging today. Just a couple other things. I think counsel makes a lot of the summary judgment. But the summary judgment was by default. And the 1401 pertains to any judgment. It doesn't pertain only to default judgments. If we look at a case, the Rocha case, which was cited by Judge Holderman in the Warren County case, in that case, that was an actual trial. There was a trial conducted in that case. And yet, 1401 was still appropriate with regard to that judgment. So I don't agree with the position that somehow because there was a summary judgment that precludes using 1401 in order to vacate that judgment. And I agree with that. But as far as what his subjective belief was, if a contract is unambiguous on its base, didn't the parole evidence rule prevent you from introducing extrinsic evidence or parole evidence to try to contradict the plain terms of a written contract? I think if we're looking at that, if we were to try to argue the contract is ambiguous or unambiguous, then the parole evidence rule would definitely come into play. I think the argument that we would make is that the contract was simply inaccurate. It did not reflect the agreement of the parties. And therefore, the court should reform the contract to accurately write it. The parole evidence rule stops you from making that argument, absent the fraud. The parole evidence rule says you can't say, we didn't mean what the contract said. It says, if a disinterested party can pick that up, read it, understand plainly what it means, then you can't bring in parole evidence to say, well, this isn't what I meant at all. Well, Judge, I guess that's an argument we'd like to try out. But I would also say, going back to the other part of that, is that I think without even getting into the issue of parole evidence, the argument as to whether or not the guarantee should include attorney's fees or not is still a valid argument that we can make at the trial court level. And that's not a matter of ambiguity. And it's not a matter of parole evidence. It's a matter of reading that guarantee document and the trial court determining whether or not the reference language includes attorney's fees or doesn't. I think there's a valid argument for us to make that it does not. And we certainly intend to make that if we have the opportunity. And I guess when we get to the equities portion of it, at the end of the day, we've spent a lot of time to get before you. However, there's nothing that's going to preclude Lyons-Lumber from continuing to pursue Mr. Johnson and his entities and obtain a judgment, allowing my clients their proper day in court. And that's all we've been asking for. And our trial judge agreed that we have a right to have that, and that we did satisfy 2-1401. And that's what we're requesting. I think what we can say is the due diligence, when we did find out, I was hired on January 14th. By January 28th, we had a motion to vacate on 5th. So it's unfortunate for justice and the efficiency of the court system. It's unfortunate that this particular attorney let my client down. But I think that in the totality of the inquiry to be made, the trial court got it right. Thank you all. Thank you. Thank you. Mr. Smith, I'm going to read all of them. Thank you. So first of all, the borrower is document C-129. The panel can look at it for themselves. The borrower is very specific, and it bars any testimony by Mr. Jefferson and the presentation of any evidence. I want to make just a couple of quick clarifications. First of all, the fact that the defense attorney may be negligent or may have committed a fraud or may have committed malpractice on behalf of the defendants is not a bill that my client should pay. My client is owed money. He's been owed money for years and years and years. This thing goes all the way back to 08 and 09. And to allow the trial court's decision to stand really rewards the defendant for their purposeful delay. If you look at the record, there are emails back and forth between the defense counsel and the defendant where they simply say, we'll just basically put our head down and stall this out as long as possible. I mean, I'm just trying to figure out, even with diligent counsel, how is he going to get by that contract? Well, and I would agree that you don't get to argue that a written contract is not what I meant in the absence of either ambiguity or fraud or some other reason. You just don't get to do it. That's what I was taught, that you're not allowed to pick up a document that you signed and say, well, gee whiz, that's not really the terms that I meant to sign, especially when we have a very In the law of reformation, that's different than interpreting a contract and whether or not there's an ambiguity. In the law of reformation, there are different ways to reform a contract. One way is if there's fraud. Another way is if the actual agreement the party's entered into, no fraud, but the actual agreement the party's entered into is not reflected in the written document. That's without fraud. That's correct. There's a whole body of law on that. And there is. And I'm guessing your client is going to state that that written document is exactly what your client intended to sign, to be signed. I anticipate that he was. Let me just mention a couple other items. The deposition that was allowed, that we were allowed by court, was limited to the scope of the 214.01 defenses. It was not a deposition in the case in chief. Warren County does have a set the standard, but even if the standard is abuse of discretion, we believe that the case should allow and does require this court to reverse the trial court's decision. Therefore, we would ask that that order be allowing and granting the 214.01 petition be benefited. Thank you. We can close up your arguments this afternoon. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will stand and brief recess for a point of change. Please rise. This court stands in recess.